**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AMY A. BECKHAM,

                           **Plaintiff,**

v.                                              **Case No:  6:11-cv-1601-Orl-GJK**

COMMISSIONER OF SOCIAL
SECURITY,

                           **Defendant.**

_____

# MEMORANDUM OF DECISION

      Amy A. Beckham (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant maintains that the final decision of the Commissioner should be reversed and remanded because the Administrative Law Judge (the "ALJ") erred by failing to: 1) properly analyze the evidence regarding pulmonary asbestosis, including failing to find it a severe impairment at step-two and failing to find that Claimant meets Listing 3.02A; 2) state with particularity the weight given to the opinion of Dr. Perdomo, a consultative examining physician, and the reasons therefor; and 3) state sufficient reasons for the ALJ's negative credibility determination, which are supported by substantial evidence.  Doc. No. 23 at 9-20.   For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.      **BACKGROUND.**

Claimant was born on May 27, 1953, completed the twelfth grade, and became a certified welder.  R. 46, 210, 255.  Claimant's prior employment history includes working as a ship welder for thirty-eight years and as a janitorial supervisor from 2004 through 2006.  R. 42-46, 58-59, 252.  On April 17, 2007, Claimant filed applications for benefits alleging an onset of disability as of December 18, 2006.  R. 210-19.  Claimant alleges disability due to breathing problems from pulmonary asbestosis, arthritis in the back and knees, musculoskeletal pain, and bronchitis. R. 115, 119, 251, 271.

The medical record reveals that Claimant underwent two pulmonary function tests ("PFT") in July and October of 2007.  R. 340-44, 363-77. [1]  Each PFT utilized an instrument called a spirograph, both before and after Claimant inhaled a bronchodilator medication, to measure, among other things, Claimant's forced expiratory volume in one second ("FEV1") at a particular numerical value.  *See* R. 340-44, 363-77; 20 CFR Pt. 404 Subpt. P. App. 1§ 3.00(A), (E) (discussing the use of PFTs to measure the severity of respiratory impairments and the use of spirometric testing to measure FEV1*).  See also Eskew v. Astrue*, 462 Fed.Appx. 613, 615-16 (7th Cir. Dec. 2, 2011) (discussing the use of spirographs to measure FEV1).  Each of Claimant's PFTs were conducted using six separate tracings, three tracings before and three after bronchodilator medication was applied.  R. 343-44, 364-65.  *See also* 20 CFR Pt. 404 Subpt. P. App. 1§ 3.00 (E) (requiring three valid tracings prior to and after administering bronchodilator

---

[1] Although the Claimant, the Commissioner, and the ALJ appear to be in agreement that Claimant underwent separate PFTs in July and October of 2007, there is some ambiguity in the record, as noted by Claimant, with respect to the October 2007 PFT.  *See* R. 22, 25; Doc. Nos. 23 at 6-7 n. 1; 24 at 7-8.  The October PFT report is dated October 28, 2007.  R. 343.  However, the data or tracings used to formulate the October PFT report are dated June 28, 2007.  R. 341-43.  Although not critical to the outcome here, the Court will accept the ALJ's statement in the decision that the PFT was conducted on October 28, 2007, the date the report was issued.

medication); *Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir. Mar. 12, 2004) (same).

The July 18, 2007 PFT revealed that Claimant had the following pre-bronchodilator FEV1 results: 1.89; 2.02; and 2.00. R. 364.   Post-bronchodilator FEV1 results were: 1.97; 1.96; and 1.92.   R. 364.   Thus, the highest post-bronchodilator FEV1 tracing value is 1.97, and the highest overall FEV1 tracing value is 2.02.   R. 364.   The report provides that Claimant was approximately 67 inches tall, she expended maximum effort and she was cooperative during the testing.   R. 364.   The report also indicates that Claimant was not suffering from an acute respiratory illness during the testing.   R. 364.

The October 28, 2007 PFT revealed that Claimant had the following pre-bronchodilator FEV1 results: 0.91; 0.56; and 0.68.   R. 343.   Post-bronchodilator FEV1 results were: 0.50; 0.88; and 0.71.   R. 343.   Thus, the highest post-bronchodilator FEV1 tracing value is 0.88, and the highest overall FEV1 tracing value is 0.91.   R. 343.   The report does not indicate Claimant's height, but states that Claimant expended maximum effort and was cooperative during the testing.   R. 343.   The report also indicates that Claimant was not suffering from an acute respiratory illness during the testing.   R. 343.   Attached to the report are the actual spirograph readings, which state that Claimant is 67 inches tall.   R. 341-42.

On May 28, 2010, after holding a hearing, ALJ Pamela Houston issued a decision finding Claimant not disabled.   R. 19-30.[2]   At step-two of the sequential evaluation process, the ALJ found that Claimant has "the following severe combination of impairments: degenerative disc (DDD) disease of the lumbar spine; (both) osteoarthritis (OA) and degenerative joint disease (DJD) of the knees; and obesity."   R. 22.   The ALJ found, without elaboration, that Claimant's pulmonary asbestosis is not a severe impairment.   R. 22.

---

[2] The ALJ issued a prior decision in this case that was reviewed and remanded by the Appeals Council. R. 124-37.

At step-three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P., Appendix 1.  R. 22-23.  With respect to Claimant's "history of pulmonary asbestosis," the ALJ states:

> [T]he [ALJ] finds this to be a non-severe impairment.  The [ALJ] is also persuaded that the claimant's pulmonary impairment is not of the severity described in section 3.00 et seq.  In July 2007, a spirometric pulmonary function test (PFT) indicated that the claimant, at 5 feet 7 inches tall, had a forced expiratory volume (FEV1) of as much as 2.02(L), which is greater than 1.35(L) for an individual 67 inches tall. . . . In addition, in October 2007, another PFT indicated that the claimant had no apparent acute respiratory illness.
>
> Thus, the claimant's impairments, singly and in combination, do not meet or medically equal the Listing.

R. 22-23.  Thus, at step-three, in determining that Claimant's impairments do not meet or medically equal a Listing, the ALJ specifically discussed the FEV1 findings of the July 2007 PFT and noted that they did not rise to the required level to meet a Listing.  R. 22.  Other than noting that Claimant had no apparent acute respiratory illness, the ALJ did not discuss the findings of the October 2007 PFT at step-three.  R. 22-23.

With respect to the Claimant's residual functional capacity assessment (the "RFC"), the ALJ states that Claimant alleges disability due to breathing problems and that the medical record reveals a "history of pulmonary asbestosis."  R. 25.  The ALJ further states that:

> In October 2007, however, a PFT indicated that the claimant did not have an apparent acute respiratory illness, despite showing a low FEV1 of 0.71(L). . . . The PFT also does not appear to be completely valid, as the claimant's height was not included in the PFT report.

R. 25.  In determining the Claimant's RFC, the ALJ discusses some of the findings of the October 2007 PFT, including the low FEV1 values, but the ALJ concludes that the PFT is not

completely valid because the Claimant's height was not included in the PFT report.  R. 25.  Thus, the ALJ apparently rejects the findings of the October 2007 PFT because it did not include Claimant's height.  R. 25.

The ALJ determined that Claimant retains the RFC to "lift or carry 20 pounds occasionally and 10 pounds frequently, and sit, stand, or walk for 6 hours in an 8-hour workday, with normal breaks.  In addition, the claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl."  R. 23.  The ALJ does not impose any limitations upon Claimant's RFC as a result of her breathing problems because the medical record fails to show pulmonary treatment, recurrent asbestosis, or complaints of shortness of breath after the alleged onset date.  R. 25.  Ultimately, the ALJ concludes that Claimant can return to her past-relevant work as a janitorial supervisor and, therefore, is not disabled.  R. 28-30.

On July 28, 2011, the Appeals Council denied Claimant's request for review.  R. 1-6. On September 20, 2011, the Claimant appealed the final decision to the District Court.

## II.   LEGAL STANDARDS.

### A.  ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled

> without consideration of age, education, and work experience. If
> the claimant cannot prove the existence of a listed impairment, he
> must prove at step four that his impairment prevents him from
> performing his past relevant work. At the fifth step, the regulations
> direct the Commissioner to consider the claimant's residual
> functional capacity, age, education, and past work experience to
> determine whether the claimant can perform other work besides his
> past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not

disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.  STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.

Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v.

Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District

Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The

District Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider

evidence detracting from evidence on which Commissioner relied). The District Court "may not

decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice.  *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under

sentences four or six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098.   Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision.  *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## III.    ANALYSIS.

Claimant argues that the ALJ erred at steps two and three with respect to Claimant's allegation of disability due to pulmonary asbestosis.  Doc. No. 23 at 9-14.  Claimant maintains that the results of the October 28, 2007 PFT show that Claimant meets of requirements of Listing 3.02(A) and that the ALJ erred by mischaracterizing, ignoring and/or improperly rejecting those results.  Doc. 23 at 10-14.[4]  Thus, the Claimant contends that the ALJ's decision is not supported by substantial evidence.

The Commissioner argues that the ALJ could not have erred at step-two because the ALJ found severe impairments, albeit not pulmonary asbestosis, and then proceeded to step-three.  Doc. No. 24 at 4 (citing *Council v. Barnhart*, Case No. 04-13128 at *4 (11th Cir. Dec. 28, 2004) (unpublished*); Perry v. Astrue*, 2008 WL 2266315 at *6-7 (11th Cir. Jun. 4, 2008) (unpublished); *Heatly v. Commissioner of Social Security*, 2010 WL 2331416 at *2 (11th Cir.

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[4] Claimant also suggests that the ALJ erred because in the ALJ's prior decision, which was vacated by the Appeals Council, the ALJ found Claimant's pulmonary asbestosis to be a severe impairment.  Doc. No. 23 at 9-10.  This argument is rejected. *See generally United States v. Sigma Int'l. Inc*., 300 F.3d 1278, 1280 (11th Cir. 2002) (prior vacated opinions have no legal effect).

Jun. 11, 2010) (unpublished)).[5]

The Commissioner maintains that substantial evidence supports the ALJ's finding at step-three that Claimant does not meet Listing 3.02(A).  Doc. No. 24 at 6-8.  The Commissioner acknowledges that for a person of Claimant's height – 67 inches – an FEV1 value at or below 1.35 meets Listing 3.02(A) and qualifies such an individual for benefits.  Doc. No. 24 at 7.  The Commissioner also acknowledges that the October 28, 2007 PFT produced FEV1 values ranging from 0.50 to 0.91.  Doc. No. 24 at 7.    Nevertheless, the Commissioner contends that the introductory language to Listing 3.00(E) provides that only the highest post-bronchodilator result from *any* PFT testing is what determines the severity of the impairment.  Doc. No. 24 at 6-7 ("The introductory language to Listing 3.00 provides that if Plaintiff underwent multiple pulmonary function tests resulting in varying FEV1 scores, '[t]he highest value [ ] of the FEV1 [scores] . . . whether from the same or different tracings, should be used to assess the severity of the respiratory impairment.'") (citing 20 CFR Pt. 303, Subpt. P, App. 1 § 3.00(E); *Eskew v. Astrue*, 2011 WL 6009005 at *3 (7th Cir. Dec. 2, 2011); *Arnold v. Commissioner of Social Security*, 2000 WL 1909386 at *3 (6th Cir. Dec. 27, 2000)). Thus, the Commissioner argues that because the July 18, 2007 PFT resulted in FEV1 values in excess of 1.35, the ALJ did not err with respect to her consideration of the lower October 28, 2007 FEV1 values, and the final decision is supported by substantial evidence.  Doc. No. 24 at 7-8.

20 CFR Pt. 404, Subpart P, Appendix 1 §§ 3.00(A)-(H) provides the introductory statements to the Listings for respiratory impairments.  *Id*.  The regulations provide that pulmonary function testing "is required to assess the severity of the respiratory impairment," and the "results of spirometry are used for adjudication under" Listing 3.02(A).  *Id*. at § 3.00(A), (E). Section 3.00(E) states that the "reported one-second forced expiratory volume (FEV1) . . . should

[5] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

represent the largest of at least three satisfactory forced expiratory maneuvers," and "[t]he highest values of the FEV1 . . . whether from the same or different tracings, should be used to assess the severity of the respiratory impairment." *Id*. Moreover, PFTs should not be performed unless "the individual is not . . . suffering from an acute respiratory infection or other chronic illness." *Id*. The regulations require that the PFT report provide a statement regarding the individual's effort and cooperation during the testing. *Id*. Thus, in order to constitute a valid PFT result under the regulations, there must be: 1) at least three satisfactory FEV1 maneuvers or tracings, and the highest FEV1 values, whether from the same or different tracings are used to assess the severity of the impairment; 2) no acute respiratory illness at the time of the testing; and 3) statements regarding the individual's effort and cooperation during testing. *Id*.

Listing 3.02(A) provides that an individual who is between 66 to 67 inches tall meets the severity requirements of the Listing if the FEV1 value is equal to or less than 1.35. 20 CFR Pt. 404, Subpt. P, App. 1 § 3.02(A). Therefore, if such an individual has a valid PFT report and the highest FEV1 value of those tracings is equal to or less than 1.35, then the individual meets the severity requirement of Listing 3.02(A). *Id*.

In this case, it is undisputed that the results of July 18, 2007 PFT do not result in FEV1 values equal to or less than 1.35. *See* R. 364. However, the October 28, 2007 PFT reveals pre-bronchodilator FEV1 values of 0.91, 0.56, and 0.68, and post-bronchodilator FEV1 values of 0.50, 0.88, and 0.71. R. 343. Thus, the highest FEV1 value of any of the October 28, 2007 tracings is 0.91, which is below the 1.35 threshold of Listing 3.02(A). Other than noting at step-three that the October 2007 report stated that Claimant did not have an acute respiratory illness and, at step-four, stating that the report "does not appear to be completely valid, as the claimant's height was not included in the . . . report," the ALJ did not discuss, weigh, or otherwise analyze

the report in any manner.  R. 22, 25.  Although, the report itself does not state the Claimant's height, the individual tracings attached thereto clearly show that Claimant is 67 inches tall.  R. 341-42.  Furthermore, the regulations provide that a PFT should not be performed unless an individual is not suffering from an acute respiratory illness at the time the test is to be performed.  *See* R. 22, 25; 20 CFR Pt. 404, Subpt. P, App. 1 § 3.00(E) ("Pulmonary function studies should not be performed unless . . . the individual is not . . . suffering from an acute respiratory infection or other chronic illness.").  Thus, rather than diminishing the validity of the October 2007 PFT, the report's statement that the Claimant was not suffering from an acute respiratory illness supports its validity.  *Id.* [6]  Thus, the ALJ's decision provides no valid reason, supported by substantial evidence, for failing to discuss, weigh, or otherwise analyze the results of the October 2007 PFT at steps-two, three, and/or in determining the Claimant's RFC.

On its face the October 28, 2007 testing appears valid under the regulations and, based on the results of the PFT, Claimant arguably meets the requirements of Listing 3.02(A).  However, the Commissioner maintains that the ALJ did not err because the regulations provide that only the highest value FEV1 score from any PFT is what is used to determine the severity of a pulmonary impairment.  Doc. No. 24 at 7 (quoting 20 CFR Pt. 404, Supt. P, App. 1 § 3.00(E)).  According to the Commissioner, because the July 18, 2007 FEV1 values were higher than 1.35, the ALJ was essentially entitled to ignore the results of the October 2007 PFT, and substantial evidence supports the ALJ's decision.  Doc. No. 24 at 7.  The Court respectfully disagrees.

The regulations do not provide, as the Commissioner suggests, that "if Plaintiff underwent multiple pulmonary function tests resulting in varying FEV1 scores, the highest value of the FEV1 scores whether from the same or different tracings should be used to assess the

---

[6] The July 18, 2007 PFT also states that Claimant was not suffering from an acute respiratory illness, which is required under Section 3.00(E).  R. 364.

severity of the respiratory impairment." Doc. No. 24 at 7 (emphasis added). Rather, the regulations state that the "highest <u>values</u> of FEV1 . . . whether from the same or different tracings should be used to assess the severity of the respiratory impairment." *Id.* Thus, under the regulations, an ALJ is required to utilize the highest <u>values</u> of FEV1 scores to determine the severity of the respiratory impairment. *Id.* In other words, the ALJ should have used the highest values from the July 18, 2007 PFT – 2.02 – and the highest values from the October 28, 2007 PFT – 0.91 – to assess the severity of Claimant's respiratory impairment. *Id.*; R. 343, 364. Instead of using the highest values from the two PFT tests to analyze and articulate the ALJ's conclusions as to the severity of Claimant's respiratory impairment, the ALJ focused only on the July 18, 2007 FEV1 values and essentially ignored the October 28, 2007 FEV1 values. R. 22.[7]

The Court has reviewed the relatively sparse case law on this issue and finds *Johnson v. Barnhart*, 66 Fed.Appx. 285 (3d Cir. Jan. 29, 2003) (unpublished) to be the most analogous. In *Johnson*, the claimant argued that the ALJ erred at step-three by failing to find that the claimant met or medically equaled Listing 3.02(A). 66 Fed.Appx. at 288. The Third Circuit noted that for an individual of Johnson's height, she would meet the listing if she had an FEV1 score of 1.05 or less. *Id.* The medical record contained three separate PFTs with the following FEV1 values: January 28, 1999 – 1.06; December 2, 1999 – 1.18; and June 29, 2000 – 0.94. *Id.* Thus, although Johnson had two prior FEV1 values in excess of the listing level value, the most recent

---

[7] The case law relied upon by the Commissioner is not on point. In *Eskew v. Astrue*, 462 Fed.Appx. 613, 615-16 (7th Cir. Dec. 2, 2011) (unpublished), the claimant had only one PFT test and argued that the ALJ erred by ignoring a low FEV1 score from that test. The Seventh Circuit found that the ALJ did not err because the claimant had a higher post-bronchodilator score from that same test and the regulations require the ALJ to use the highest value FEV1 score to assess the severity of respiratory impairment. *Id.* Similarly in *Arnold v. Commissioner of Social Security*, 2000 WL 1909386 at *3 (6th Cir. Dec. 27, 2000), the claimant argued that the ALJ erred by failing to consider low FEV1 scores from two different PFT tests. The Sixth Circuit held that the ALJ did not err because the ALJ used the highest values from both PFTs to assess the severity of the claimant's impairment, and both of the highest values exceeded the value for listing level severity. *Id.* Thus, neither *Eskew* nor *Arnold* support the proposition that the ALJ can ignore the highest value FEV1 score from a separate PFT test, especially where that FEV1 score is below the threshold for listing level severity.

FEV1 value was 0.94, which was below the threshold requirement of the listing.  *Id.*

 The ALJ dismissed the lower FEV1 value because it was inconsistent with the results of the prior two higher FEV1 values and Johnson's activities of daily living, and, therefore, the ALJ found that Claimant did not meet or equal Listing 3.02(A).  *Id.*  The Third Circuit held that the ALJ's finding at step-three was not supported by substantial evidence because the ALJ should not have simply dismissed the results of the latest PFT because they were inconsistent with the earlier FEV1 scores, but the ALJ should have clearly articulated why the ALJ decided to credit the earlier scores over the later score.  *Id.* at 288-89.[8]  The Third Circuit stated that if the ALJ was unable to reconcile the earlier PFT scores with the later PFT scores, then the ALJ should have either consulted a medical expert or have obtained additional medical evidence.  *Id.* at 289.  The Third Circuit did not find that based on the latest FEV1 score that Claimant met Listing 3.02(A), but reversed and remanded the case to the Commissioner for further proceedings.  *Id.* at 288 ("While we decline to determine on the record before us that Johnson's pulmonary functioning did meet or equal [the Listing], we conclude that the ALJ should not have simply ignored . . . or summarily dismissed supporting test results as 'inconsistent.'").

 Similarly, in this case, at step-three the ALJ essentially ignored the results of the latest PFT, which if credited would meet Listing 3.02(A), and, in determining the Claimant's RFC, the ALJ rejected the results of the latest PFT because it did not contain the Claimant's height, which is inaccurate.  R. 22, 25, 341-43.  The Court finds *Johnson*, 66 Fed.Appx. at 288-89, persuasive, and concludes that the ALJ's analysis of Claimant's pulmonary asbestosis, which is critical to the outcome of this case, is not supported by substantial evidence.  *See also Seals v. Barnhart*,

---

[8] The Third Circuit further held that the ALJ should not have dismissed the latest PFT results because they were inconsistent with the Claimant's activities of daily living because at step-three, the regulations provide that the ALJ should not look beyond the medical evidence, symptoms, and laboratory findings.  *Id.*  (citing 20 CFR § 404.1526(a)).

308 F.Supp.2d 1241, 1246-47 (N.D. Ala. 2004) (finding that a PFT test with higher FEV1 values, standing alone, is not good cause to ignore a second PFT test with lower FEV1 values that appears to meet the listing).

While Claimant argues that this Court should credit the latest PFT scores, find that Claimant meets Listing 3.02(A), and reverse for an award of benefits, the Court is mindful that it cannot reweigh the evidence or determine the facts anew. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). Moreover, the evidence in this case is conflicting on the issue of whether Claimant meets Listing 3.02(A). *See* R. 341-43, 364. Therefore, the Court cannot find based on this record that Claimant is disabled beyond a doubt or has suffered an injustice. *See Davis*, 985 F.2d at 534; *Walden*, 672 F.2d at 840. Accordingly, as in *Johnson*, 66 Fed.Appx. at 285, the Court is persuaded that the proper remedy is a remand for further proceedings. On remand, if the Commissioner is unable to properly reconcile the two PFTs and clearly articulate the reasons therefor, the Commissioner may need to seek an expert medical opinion or order another consultative PFT.[9]

## IV.   CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g); and

2.   The Clerk is directed to enter judgment for Claimant and close the case.

---

[9] Because the final decision is not supported by substantial evidence, it is unnecessary to address the remaining issues.

**DONE and ORDERED** in Orlando, Florida on March 11, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate
P.O. Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Kristin M. Rogers, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr
Orlando, FL 32817-9801